Thank you Judge Haynes and may it please the court. Sovereign immunity is the rule, an injunction under Ex parte Young, the exception. As this court has repeatedly recognized, that exception applies only when a plaintiff can show that a given defendant has both the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty. And an Ex parte Young injunction is further only available when it would actually provide plaintiffs with the real world relief they seek. Plaintiffs can make none of these showings because plaintiffs name the wrong defendant. The secretary doesn't enforce HB 1888, local officials do. While the secretary is empowered to send advice to and take questions from local officials, her advice is neither compulsion nor constraint. And because only local officials can give plaintiffs the real world relief they want, the injunction against the secretary cannot possibly provide plaintiffs with that relief. Each of these three deficiencies independently requires reversal. Now first, the secretary lacks the particular duty that's described in the City of Austin to enforce HB 1888 and specifically Texas Election Code Section 85.064. As this court held in the City of Austin, the Ex parte Young analysis begins with whether the plaintiff has named the proper defendant. The first step there is to examine the specifics. Let me just throw out a hypo. Let's imagine that in the gubernatorial election of 2022, Travis County puts up tents outside the cafeteria of every college within Travis County and has them open during early voting from 11 to 1 on weekdays for voting. What is anybody going to do about that? Well, a couple of things, Your Honor. The first thing I would expect is that some individual citizen would file immediately in the state district court in Travis County, filing an ultra-virus action and seeking immediate relief. More to what I think you're implying, Your Honor. I expect that after the secretary issued an order and sort of used these informal requests and gave advice that we think you're violating the law, she might very well ask that the Attorney General file suit under 31.05. Two points. I heard your several questions, Judge Graves, regarding whether or not the Attorney General would be entitled to say no. From what I can tell you about other portions of Texas law, there are under certain circumstances mandatory shall represent statutes. So, for example, for the Public Utility Commission of Texas, there's a provision that says that the Attorney General shall represent the PUC in a variety of cases. Given that I'm unaware of there being a comparable shall represent obligation of the election code, and given that the Attorney General is a constitutionally independent elected state officer, I understand that that would remain in his discretion as to whether or not actually to file a suit. But even given that, Judge Haynes, as you pointed out, this court has had about 12 of these kinds of cases and doesn't simply look to see who in the end might be able to sue. Which, by the way, of course, the answer is the Attorney General, not the secretary. The question is who actually in the real world implements this rule. Should the Texas Democratic Party just start suing the Attorney General and that would end all of these multiple cases we keep getting on this subject? Well, Your Honor, Ex parte Young Relief is a narrow exception to sovereign immunity. It might well be the case that the Texas Democratic Party can't actually preemptively sue the Attorney General or the Secretary of State, depending on the facts of the case in the given election code provision. And instead that they have to resort to state court remedies to start with, or they have to wait for at minimum, again, depending on the specific provision, for there actually to be a demonstrated willingness to enforce. Like, for example, if the Attorney General said, and we're talking, we have to talk about a different hypothetical section here, because HB 1888 plainly requires local officials to enforce this. But a hypothetical different suit where we get to City of Austin step two, and it's not clear who enforces it, it names no one, and the Attorney General has threatened to sue over it. Then perhaps the Texas Democratic Party might be able to avail itself of ex parte Young against the Attorney General. But the fact that the Texas Democratic Party strongly desires there to be one statewide official, who's the sort of repository of all suits for statewide relief, doesn't mean that state law is structured that way. And quite frankly, that's exactly the argument this court has rejected several times. My friend on the other side in the previous case insinuated the Texas Democratic Party didn't consider or didn't approach the question of whether the secretary's duty of uniformity under section 31.03 connected her to sort of all election laws in a free floating sense. But as you pointed out, Judge Haynes, well, of course, this court has rejected that. One, it did so expressly in Texas Democratic Party, as it said, nonetheless, a provision by provision analysis is required. And two, if the court had actually said, well, no, this duty of uniformity means that all election laws are appropriately enforced by and sort of tailored to, you know, the suits are appropriately tailored to the Secretary of State, there'd be no need for a city of Austin test. There'd be no need for half of these cases. There'd be one paragraph on that part of ex parte Young, and it would all turn on whether or not the secretary has demonstrated a willingness to enforce. But of course, that's not how, again, about a half dozen of these or so have come out. And more to the point, even if we put aside city of Austin entirely, and we just ignore that local officials are the officials named, you still get to the fact that this particular question and answer booklet basically is the furthest thing imaginable from a threat of a lawsuit. I mean, the HB 1888 circular that was put here was part of an advisory bulletin basically that was emailed out by what I understand is one of the secretary's subordinates discussing two different laws, HB 1888, and I believe 1040 is the other one. The first page has three quarters or so of just sort of an outline of what the secretary views the consequences and contents of HB 1888 to be. And then it's just a Q&A format where the secretary attempts to sort of postulate what local officials across Texas might wonder about the consequences of this bill and tries to lay out answers. At no point does it even so much as mention an order, which wouldn't be an enforcement action. That's why I'm kind of seeing these two cases as a little bit different. And I could be misunderstanding the argument that the plaintiff is making. But it seems to me that in the other case, they were arguing that the secretary of state, the predecessor, invented this wet signature rule, which is nowhere in the statute. In this case, they seem to be arguing the statute changed the world from where we could have tents by the cafeteria to where we can't now or where it's too expensive to do that now. And the secretary of state really didn't cause that. Secretary of state just explains that. And so I see those as different. And yet both sides seem to be arguing that kind of these cases will come out the same way. What is your answer? Do these two cases necessarily come out the same way? I think that we're pointing out makes this an easier case, Your Honor, though, obviously, I believe the cases come out the same way for reasons related to the city of Austin, the total lack of anything like, for example, just to be to be colloquial, a threat of a lawsuit. But here, even the plaintiff's complaint points out that it's HB 1888 that they really have a problem with. The law of its own force directs local officials that if they choose in their discretion to have temporary polling places in their relevant election jurisdiction, that they have to keep them open for eight hours or for very low populations for three hours. That's that is the case. 1888 does, in fact, directly require local officials to conform their conduct to something and to operate in their discretion in a specific way. So they could still use the tent and they could still put it by the cafeteria, but it would have to be open eight hours throughout the early voting period and not two hours at lunch during the weekdays. That's how I understand the law. Yes, Your Honor. They'd also have it doesn't have to be a nice building. It could be a tent. I understand that temporary voting voting places doesn't do not have to be stood up in sort of permanent civic buildings either. They are permitted just be temporary. You're right, Your Honor. Indeed, this constrains their this constrains their their discretion in a particular narrow way that that's tailored to the electioneering concerns the legislature had. The county commissioner's court could still decide, well, we'll shut down the the church on Main Street and instead put up the tent at Austin College if they wanted to. Right. On the assumption that there's no other collateral federal state law restriction on that, you know, depending on which voters are served by when you can imagine there being other kinds of claims in play. But I don't know of any reason that would be illegal just off of the hypo you've given me, Your Honor. So it's the county commissioner court sitting down and saying, well, we just don't have the money to put up tents everywhere for this law. Well, that's right. That's right. They're not understanding. So the cost is what? Because usually my knowledge is that a lot of this is volunteers or fairly minimally paid people are involved in the actual, you know, where you show up to vote an area. So what is costing what is causing the fifty thousand to one million dollar difference that the affidavit from the Travis County person relies on? Well, two points, Your Honor. First, neither of those numbers have been tested in factual development, nor nor do we need them to be at this stage of litigation. So I have no reason I have no reason to understand whether they're true or why they'd be true. And second, because of the more important point, which is the secretary at no point stands up these temporary polling places. She doesn't have the numbers on them because she doesn't do that ever for any reason. No injunction this court could issue could possibly give plaintiffs what they actually complain about, which is, you know, putting it colloquially that they want tents on campus so that would be easier for Miss Gilby to vote. And and so that's just not something the secretary deliver as a consequence. Even if we wiped out eighty five point six four, it wouldn't mandate that Travis County would have to put the tents up. That's exactly that's exactly right. They'll say, well, we're just kind of tired of the tents or it's not working well, whatever. And they could just decline the tents. That's precisely right, Your Honor. Local officials have one hundred percent discretion as to whether or not they choose to exercise these in the first place. Indeed, that's what makes this this case such a powerful comparison with me familiar Voda, because my friends on the other side have tried to raise the argument to the effect of, well, you know, this law takes away their discretion. And we've got this affidavit that says that that if they had the discretion, they would be they would set these up again, for which me to the voters specifically specifically address the possibility that if this court had enjoined the if this court had enjoyed the secretary from having individuals who were in the electronic ballots and sort of electronic voting system was in the statewide program there, perhaps some of them would choose to print paper ballots. And perhaps some of them might or might not. But an injunction against the secretary, since the secretary on her own could not result in anyone issuing paper ballots and didn't guarantee any county was going to use them means that they just couldn't give ex parte young relief the same year. It might very well be the case that one or more counties would choose to do so. I don't think this court is obligated by any means to defer to the declaration by Miss Deborah, respect her name. Can I ask how you pronounce that? Deborah? Anyway, that might be right. And I'm just about trying to pronounce it again, Your Honor. So we'll just call her the Travis County Court. She's not even the one that would do the voting on the money. So if if this statute stays where it is. And it would still be the Travis County Commissioner's Court that would rule on whether they're going to spend a million, assuming argument that that's the right number to put up these tents. Well, not only that, not even the Travis County clerk. I defer to Your Honor about how Travis County's internal government is structured. That sounds right to me. But not only that, paragraph 16 and 17 of the Travis County clerk's declaration make exquisitely clear that it's HB 1888. It's the source of consternation. That's the law that they're seeking to enjoin. They're seeking to test the validity of that law. In the end, the problem with plaintiff's suit here is that they chose to sue an official that has no connection to the enforcement of the law and has no relationship to causing the real world effects that they want in terms of temporary polling places. As a consequence, they can't avail themselves of an ex parte injunction because the secretary can't create pop-up voting sites and she hasn't threatened to enforce anything like a lawsuit or something out of order against them. Those litigation errors are fatal and the secretary is entitled to sovereign immunity. Mr. Stone, is it the state's view that this court's election cases are somewhat disharmonious when it comes to the question of Secretary of State immunity or standing? Well, Your Honor, the state's view is that we take this court's precedence of course as a given. That having been said, I wouldn't disagree that there is some tension among the various lines of cases here and there. How might the panel, if it were inclined, how might the panel use these cases to make the disharmony as harmonious? Well, Your Honor, I think that several of the cases have tied in the city of Austin test in the first place, which takes as a given, which gives an easily testable, easily verifiable first cut at figuring out whether or not a plaintiff is named the right defendant. There's two steps there and this court has applied it several times. So I think you have to take that as a given, as a bedrock, unless this court's going to radically reshape its ex parte young doctrine, which I don't think is necessary to decide this case, frankly. But you start with that city of Austin test and look to see whether a given provision names someone to actually implement the real world thing. And if it does, then again, it's not saying that groups like the Texas Democratic Party can't sue, it's saying they have to sue the right official. And this is in some sense, this is much ado about a particular litigation mistake that's inherent in this case and could have been pleaded around or could have been tested in a different way. So you start there. I think of a lot of the concerns about the edge cases about what happens when you have the election code imposes a restriction, but doesn't actually name anyone to do it. That's when I think this court has to get into sort of a, you know, it looks at a practical real world who actually really ends up imposing coercion or threatening it. You know, the sort of two part test who has a particular duty and who actually in the real world is doing the coercing. I think that second test of city of Austin is where this court deals with those edge cases. It has to make some hard calls on one side of the line or the other. But luckily enough, for purposes of making a sort of free floating, the secretary is always right argument. This court's already shut that this court's already precluded that that's been decided that might be an easier rule. Indeed, it obviously would be an easier rule, but it's incorrect under experts a young itself and this court's rejected it multiple times. I think of this court used to that test, it's going, you know, there are going to be hard cases there always are but between that, that sort of particular duty filter and looking to see if anyone's actually done something like litigation. I think that would serve this court well. Well, if there are no further questions, I certainly don't want to tremble on your patience, your honor. Well, there you go. You've used your time and you say time for a bottle and we'll turn to Mr. Quentin. Thank you, your honor, like to start off by responding to a question that Judge Haynes raised about about the what seems to be about the redress ability of the of the relief that we seek. And I want to point out, your honor, that the declaration makes clear that this law, HB 1888 has resulted in county clerks not offering the same number of satellite early voting sites that they did before the law was passed and county commissioners court given more money and they could still do the chance that that certainly is a possibility. However, what we're required to demonstrate here is that the relief we seek is likely to redress the injury that we've asserted. And just because that there's a third party involved in redressing that injury does not necessarily eliminate the redress ability or does not necessarily disconnect the secretary or if we banned the secretary of state from enforcing this statute. Wouldn't there still be the statute and wouldn't there still be the ability of the ultra virus individual and or the attorney general to sue Travis? I'm just using Travis County because that's who did the affidavit. Travis County decided to do the tense from 11 to 1 outside the cafeteria Monday through Friday. My earlier hypo. Not quite, Judge Haynes. If the court grants the relief that we seek, the court would declare HB 1888 unconstitutional and then join the secretary from taking action to enforce or implement the provisions of 1888. And that is not unprecedented. And I also want to respond to Mr. Stone's comments regarding sort of free flowing liability for the secretary of state. That's not unheard of. It's actually the law. And in some instances, because under this court's decision, OCA, the court OCA General Houston, the court specifically stated that the secretary of state or the invalidity of an election law is without question traceable to and redressable by. Is this a facial challenge? Because if you look at the statute on its face to me, I don't see that it's discriminating against anybody or causing any problems. It's only when we get into the facts that she's given us. For example, Travis County, where, you know, students are now having trouble voting. I mean, I'm not agreeing with that or disagree with them saying that's your allegation. So how is this a facial challenge? Judge Haynes, it's a facial challenge because it imposes an undue burden on the right to vote. And even even a challenge that is fact bound or that requires facts or evidence to demonstrate. You could argue it broadens the right to vote because instead of having to be at the cafeteria for lunch, I could be there for breakfast. I could be there for dinner and afternoon snack. It's broadening my ability to get to the tent. So why is it on its face to me? It's just equalizing all of these buildings to be open for at least eight hours. I don't see that on its face. It's causing problems. It's only maybe the facts in Travis County versus some other county where maybe they're not having that issue. Well, on its on its face, the problem it causes is that it eliminates the discretion of county officials and eliminating the discretion of county officials to select satellite early voting sites for fewer hours than the eight hour maximum. That is what imposes the undue burden. And the fact that the court has to analyze the specific burdens that that are attendant to each law does not necessarily mean the law is not the challenge is not a facial challenge. A law can be a facial challenge when it impacts a significant number of voters. But before I complete that point, I also want to point out that, you know, I don't want to get too far down the merits because the analysis here is really driven by the secretary's defense that she's protected by sovereign immunity. And there are a number of there are a number of cases that reject the secretary's position. For instance, the secretary's suggestion that there is no that there is no enforcement proceeding, that there is no lawsuit that has been filed. Of that interpretation of of the of sovereign immunity is at war with ex parte young and at this court's prior precedents, that the court may recall and ex parte young, the Minnesota attorney general was was enjoined from enforcing the law before the law even took effect. The reason that the law went up to the Supreme Court was because he attempted to enforce the law after the injunction, and it went up to the Supreme Court on a habeas petition. In other words, even the Supreme Court did not believe that there had to be an actual enforcement action in itself to trigger the ex parte young doctrine. Nor does this court, if you look at the case where the attorney general's letter to my biochemicals, when you look at the attorney general's letter, the letter itself isn't isn't compulsory. The letter itself doesn't impose any liability, but the letter is a sign that that additional enforcement is afoot and the letter constraints. And that's the same thing that the secretary of state's advisory does here. The advisory is not a lawsuit. The advisory does not impose any any legal consequences. But this court has not at any point held that legal consequences is the line at which a law is then becomes sufficiently enforced to trigger ex parte. Why doesn't me familiar voted control this case? I mean, if the secretary has no connection to the establishment of temporary branch locations, and the secretary has no connection to the days and hours of permanent branch locations, then. Explain to me why it doesn't naturally follow that she has no connection to the days and hours of temporary branch locations. Well, Your Honor, and I appreciate the question, Judge Willett. I think there's a difference here in the analysis and me familiar both in this case because me familiar both did not consider explicitly section 31.003, which imposes the duty to obtain and maintain uniformity. And that there was no discussion of any actual act that the secretary took that demonstrated a willingness to enforce. And that's a key difference from that decision to the facts as alleged in this case, the secretary's advisory, the secretary's advisory, which was published and which remains on the secretary's website. And which county clerks have testified in the declaration that they consider to be binding that advisory crosses from a process from general instruction to an act of enforcement. And as I mentioned, the enforcement of these provisions occurs through various means. It's not limited to just the lawsuit. And when the secretary begins to issue advisories and begins to issue instructions on how to interpret a specific law, that is an act of enforcement. That is part of the road to enforcement, which ends when the secretary seeks mandamus relief. And I'd also like to address the argument that there are local officials who enforce the provisions and they are the only appropriate defendant because that's what it appeared that Mr. Stone was suggesting. But that's not actually what the law of the circuit. If you recall, once again, in Texas Democratic Party v. Abbott, the court noted that other officials were involved in enforcement, specifically the local county officials and the county clerks were responsible for reviewing the absentee ballot applications. Nonetheless, notwithstanding the fact that those local officials were involved in enforcement, the secretary also had a role in enforcement. In other words, this court has recognized on multiple occasions that more than one official can have a role in the enforcement of a particular statute. And the fact that local officials set early voting times and hours does not disconnect the secretary from the enforcement of this provision. And what I guess I have a couple of questions. One, just as a practical matter, let's assume the determination is that the secretary isn't connected and then you need to sue the county registrars or whoever these individuals are. As a practical matter, how much difference is that? Is it financial? Is it the logistics of it? What's problematic about that versus being able to identify the secretary, sue the secretary, so you identify county registrars who need to sue them. Let's talk about who needs to be sued. What's the practical difference? So Judge Graves, there's several practical differences. The first is that you could actually generate the type of disuniformity that the secretary is instructed to avoid under the Texas Election Code. For instance, a litigant may sue an individual county or two just to enforce a specific provision or to challenge a specific provision in those counties. And that could lead to disuniformity in the application of certain provisions unless the secretary were to step in. You could also have a situation where if the court adopted the secretary's interpretation of Ex parte Young and sovereign immunity argument, you'd have a situation where litigants would have to sue all 255 county clerks or county registrars or local election officials in all 254 counties just to ensure that an unconstitutional law is not implemented in Texas. Meanwhile, the Texas Secretary of State already has the affirmative duty and mandate to ensure that these laws are interpreted. 254 completely ignores the fact that, I mean, it varies from county to county. That is why there's discretion. So, basically, you're going to try to have a lawsuit that says, well, every county has to have a tent at the college. What if the college is downtown? I mean, what if it's UNT Law School that's right downtown next to plenty of places where you can vote? So, I mean, versus it's on the far side of a vast county up in the panhandle, and it's really far from anywhere you could vote. Yes, Judge Haynes. I think that depends. The practical consequences will depend on the facts of the lawsuit. So, if there were a lawsuit that depended on the facts as applied in each county, then perhaps you wouldn't have to sue all 254. But if it were a lawsuit that challenged a law, like, for instance, a voter ID law, which would be implemented in every single county, then what the Secretary is suggesting is that a law like that could only be enforced in federal court by suing all 254 counties in a single lawsuit, or suing each and every county individually, or perhaps even suing some counties and not others, resulting in an inconsistent application of the law. What is the result that the Secretary's sovereign immunity argument is seeking here? And that result is specifically what this court avoided in OCA. When this court in OCA stated that the invalidity of a Texas election law is without question traceable to and redressable by the Secretary, the court was indicating that these laws are the responsibility of the Secretary to enforce. The Secretary plays a significant role in enforcement, at least a sufficient role, or at least the scintillation part. That brings us back to the question of, you know, sort of facial versus as applied, because it seems to me that on its face, saying you need to be open a reasonable amount of time and so forth, so that we're not running into the tent at this exact moment that you think is convenient, but that I'm in class. I don't see on its face, and I'm not, you know, I realize I don't have all the briefing. I'm not trying to rule on what the future might be, but at least given what y'all have fled here and assessed, it seems that your argument is based upon Travis County and maybe some other counties that have been sending tents or whatever to the schools. More than it is based on the notion that this isn't saying somebody of a certain ethnicity or a certain race can't vote. That's obviously facially invalid. This is something that on its face seems very normal. It's the problem that you've identified in Travis County and so forth. It seems to be the issue. Judge Haynes, I think that there's an additional aspect to the claim that may resolve. So that additional aspect is actually the withdrawal of discretion, and that's uniform across every county in the state. In other words, all 254 counties now do not have the discretion to determine which satellite early voting locations to place for limited hours or which satellite early voting locations to place for a certain number of days in order to best serve their communities. And that loss of discretion is the target of this lawsuit or is a target of this lawsuit, and that's uniform across all counties. And that injures plaintiffs because it makes it more difficult to engage or to carry out mobilization efforts. If counties cannot react to some of their communities' needs as they come up, if counties have no discretion to react as they did before. And that also imposes a burden on the right to vote and the number of other injuries that we've identified in our complaint. And so without delving too deep into the merits, there is an aspect of this that is a facial challenge, which is the denial of discretion across the board. And so we're not simply asking the court below to place a polling place here or open a polling place for a certain number of hours. We're asking to restore county discretion. And that's part of what makes this a facial challenge as well. So in addition to the practical consequences of the sovereign immunity claim that the secretary has alleged here, there are a number of reasons why this court should reject that argument when looking at all of the other cases and looking at the spectrum of cases. There are a number of reasons that have acknowledged the fact that not only is a general duty potentially sufficient when accompanied by specific enforcement actions, as the court did in Nyugen, but it's also clear that the duty specified in Section 31.003, the duty to obtain and maintain uniformity. That duty is much more specific than the general duty that has been ascribed to the attorney general and the governor to uphold election laws. That is a more specific duty. And that is a provision and a duty that actually ties the secretary to the enforcement of election laws in a way that the duty to uphold the law generally does not necessarily tie the attorney general to every single law. It's not necessarily an overreach to suggest that the secretary does have the specific duty to enforce the election code and whichever provision is at issue here. And that has actually been recognized by the Supreme Court in Ex Parte Young. The Supreme Court recognized that this duty can actually come from the general law or it can also come from the overarching responsibility with respect to a specific aspect of the law. So there is no reason to suggest that this court cannot designate the secretary as the official who enforces the election code simply because it would lead to the secretary being a defendant. And so I think it's important to recognize that this court has, in fact, contemplated that. I would also note that Mr. Stone did not identify any precedent that would support the suggestion that plaintiffs cannot preemptively seek to invalidate a facially unconstitutional law in federal court. That would result in a sea change in our jurisprudence. What plaintiffs have done in enforcing this provision against the secretary of state and what plaintiffs have done in seeking relief in federal court is similar to what plaintiffs have done throughout the number of cases in federal court in other jurisdictions and in this jurisdiction under various federal laws and the federal constitution. So the practical consequences of this would be to end that practice and to create a situation where plaintiffs have to seek relief against individual counties or all 254 counties, which is untenable, and that is not the law. And for these reasons, Your Honor, we ask that you affirm the district court's ruling. Okay, thank you. Appreciate your argument. Mr. Stone, you have to save time for rebuttal. Thank you, Your Honor. So I think my friend on the other side has actually sharpened up our disagreement to one key question, which is whether or not this court is free to or should deem that under Section 31.03, the Texas Secretary of State is, in fact, the enforcer of the entire election code. Well, this court doesn't write a blank slate. It's already rejected that argument multiple times. First, to turn to your question, Judge Willett, regarding why MeFamiliaVota doesn't control, my friend on the other side insinuated that those arguments about 31.03 weren't presented and weren't considered by the court. That's just flat wrong. Page 51 of the opening brief in MeFamiliaVota explicitly makes the argument my friend on the other side is proposing here, namely that the uniformity requirement of Section 31.03 specifically ties basically the secretary as an enforcer to the entire election code. So he's just mistaken. Texas Democratic Party rejects this as well, in an opinion by, I believe, Judge Southwick, specifically discussing that the Texas election code by its nature divides some responsibilities between the secretary and some between local officials, and that's why this court requires a, quote, provision-by-provision analysis in determining who the correct official, if anyone, under ex parte might be to sue. So to the extent that my friend has teed this up as a dispute between whether or not this court is free to take that path, it's, that's already been foreclosed by precedent squarely and is, yes, Your Honor. Do you see this as a facial challenge? Well, no, at this early stage, it's a little hard to tell, Your Honor, but it doesn't seem to be, it doesn't seem to be harmonious because the very nature of the claims they're raising are going to vary from county to county, right? It's, by necessity, if a particular, if a particular voter or a particular student, given one of the plaintiffs in this case, says, on my particular facts and circumstances, I need temporary voting places to be here or there, wherever it might be relevant, because otherwise it imposes an excessive burden to me. That's, by necessity, a burden that attaches to that person and maybe a handful of other similarly situated people. You know, to put it pithily, what might be burdensome and necessary in Harris County and in Williamson County and Uvalde are just not the same. They're not the same, and the justifications that those various counties might have for having temporary polling places in one place and not another aren't going to be the same. So, it's a little hard for me to tell because their theory seems to simply be they want HB 1888 invalidated and sort of the rest of the procedural rigmarole in between the two isn't of great concern. So, it's hard for me otherwise to answer, Your Honor. I can speak to one question of yours, though, Judge Graves, regarding what's sort of the practical difference. I think as a practical matter, just sort of describing what would happen if plaintiffs were required to sue individual counties, is that when they sued a county that really sort of was adverse to them, really believed that they were wrong as a matter of policy and law, you end up having a real lawsuit in front of a federal district court or something on that order. It'd go up and then the positions will be tested before this court, and if this court sustained an injunction and sort of on the merits, I'd be willing to bet very few counties are going to want to act in the teeth of an adverse Fifth Circuit ruling against one of their local county clerks. That's just as a practical matter, that's how a lot of this litigation proceeds is that someone has a test case, the test case is eventually ruled on, and then everyone acts accordingly. The fact that they're not allowed to sue the secretary because of Section 31.003 as a sort of free-floating enforcer of the election code, well, that's unfortunate for this case, but it doesn't change Ex Parte Young Law necessarily to hold these plaintiffs to the requirements of the City of Austin. If there are no further questions, I'm happy to cede a few seconds back. Okay, thank you both sides. We appreciate your arguments. The case is now under submission, and we will excuse you all from the courtroom.